UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Matthew James Channon,                    Case No. 7-09-12552 JA

          Debtor.

## MEMORANDUM OPINION

This matter is before the Court on Creditors' Objection to Exemptions (Docket No.27). David Forlano and Debrianna Mansini (sometimes, "Creditors"), by and through their attorneys, The Law Office of George "Dave" Giddens, P.C. (Patricia Bradley), objected to Debtor's claimed exemption in certain funds Debtor deposited pre-petition into a Roth Individual Retirement Account ("Roth IRA"). The Court held a final hearing on the Objection to Exemptions on January 6, 2010 and took the matter under advisement. Having considered the evidence, argument of counsel, and applicable statutory and case law, the Court will overrule the objection and allow the exemption.

## FACTS

On August 5, 2008, Messrs. Forlano and Mancini commenced an action against Matthew Channon ("Mr. Channon" or "Debtor") and CSOL Corporation ("CSOL"), a company Mr. Channon owned, alleging that Mr. Channon and CSOL defrauded Creditors in connection with their purchase of a solar system from CSOL and in connection with the purchase and sale of securities. On February 10, 2009, Messrs. Forlano and Mancini obtained a judgment by default against the then defunct CSOL in the amount of $125,250.36. About four months later, on June 14, 2009 (the "Petition Date"), while Creditors were prosecuting their state court claims against Mr. Channon, he filed a voluntary petition under Chapter 7 of the Bankruptcy Code thereby commencing this bankruptcy case.

Shortly after Creditors obtained a judgment against Mr. Channon's corporation, while Creditors where in hot pursuit of a fraud judgment against Mr. Channon, and within months before he commenced his Chapter 7 case, Mr. Channon used substantially all of his non-exempt assets to open a Roth IRA account with Bank of America in which he made the maximum allowable tax exempt contributions of $5,000 for each of tax years 2008 and 2009, for total contributions of $10,000.[1]  As a result of business losses, Mr. Channon received a tax refund in 2009 for tax year 2008 in the amount of $9,057.  Mr. Channon, at age 32, used this tax refund and a portion of earned income to make the contributions to the Roth IRA.  Mr. Channon earned approximately $5,000 per month as an independent contractor for Birken Solar/Birken Energy ("Birken") in part of 2008 and until April 22, 2009.[2]  Mr. Channon did not earn any income between April 23, 2009 and the Petition Date, although he did receive some funds during that time from Birken that he previously earned.  Mr. Channon's work for Birken was the first time he made sufficient income to consider making contributions to his retirement.  Mr. Channon was insolvent when he made the IRA contribution.  There are no non-exempt assets available for distribution to creditors in Debtor's Chapter 7 case.

On the Petition Date, Debtor filed his schedules of assets and liabilities ("Schedules") and his Statement of Financial Affairs ("SOFA"), and disclosed information relating to the Roth IRA.  Schedule B listed the Roth IRA valued at $10,000.  Schedule C included a claim of exemption for the Roth IRA, pursuant to §§42-10-1 and 2, NMSA 1978.  In response to SOFA Question 11 regarding Closed Financial Accounts, Debtor disclosed that funds were transferred to his Roth IRA from his Bank of America checking account.

### DISCUSSION

---

[1] Evidence presented by Creditors established that Debtor deposited $10,000 in the Roth IRA between February 20, 2009 and March 31, 2009.  The date or dates of deposit within that period is not in evidence.
[2] Debtor earned $16,873 for the period January 1, 2009 through April 22, 2009.

A debtor's claim of exemptions in a bankruptcy case is governed by 11 U.S.C. § 522. Sections 522(b)(1), (2) and (3) permit individual debtors to elect either the exemptions available to them under applicable non-bankruptcy state or federal law, or the exemptions available under 11 U.S.C. § 522(d), unless applicable state law does not permit a debtor to claim exemptions under 11 U.S.C. § 522(d). New Mexico law does not preclude claims of exemptions under 11 U.S.C. § 522(d).[3] Debtor elected to claim exemptions under New Mexico law as permitted by 11 U.S.C. § 522(b).

When a debtor claims exemptions under state law, as here, applicable state law governs whether an exemption will be denied as a result of transmutation of non-exempt property into exempt property,[4] except as provided in 11 U.S.C. § 522(o),[5] which does not apply here. In New Mexico, exemptions generally exist to benefit the debtor and the debtor's dependents.[6] New Mexico courts liberally construe exemption statutes to promote the policy that families should not become destitute as a result incurring unforeseen debt.[7] But at the same time, "…New Mexico law does not allow a debtor to find shelter in these statutes by perpetrating a fraud upon his or her creditors."[8]

Whether an exemption should be allowed under state law when non-exempt assets have been used to acquire exempt property implicates the following New Mexico statutes: 1) New Mexico exemption statutes; and 2) New Mexico's fraudulent transfer act. New Mexico's

---

[3] *See* 11 U.S.C. § 522(b)(1) and (2); 4 Collier on Bankruptcy ¶ 522.01, n.2 (Alan N. Resnick and Henry J. Sommer, eds. 15th ed. rev. 2005) (listing those states that have opted out of the exemptions contained in § 522(d)) and ¶ 522.02[1]).

[4] *In re Linn*, 52 B.R. 63, 65(Bankr. Okla. 1985); *In re Cunningham*, 354 B.R. 547, 553(Bankr.D.Mass 2006); *In re Krantz*, 97 B.R. 514, 521 (Bankr.N.D.Iowa, 1989); *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 873(8th Cir.1988);

[5] Section 522(o) applies to the homestead exemption.

[6] *Ruybalid v. Segura*, 107 NM 660, 666, 763 P.2d 369, 375 (N.M.App.1988).

[7] *In re Portal* 132 NM 171, 172, 45 P.3d 891, 892 (2002)

[8] *Dona Ana Savings and Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 593, 855 P.2d 1054, 1057 (1993).

-3-

exemption statutes provide that all funds in a retirement account are exempt. *See* § 42-10-1 NMSA 1978 (" . . . any interest in or proceeds from a pension or retirement fund of every person supporting only himself is exempt from…attachment, execution or foreclosure by a judgment creditor…"); *Dofflemeyer,* 855 P.2d at 1057 ("On their face the statutes allow for unlimited exemptions for life insurance, annuities, and pension and retirement funds."). By the terms of New Mexico's Fraudulent Transfer Act (the "Uniform Fraudulent Transfer Act" or UFTA"), a transfer is an avoidable fraudulent transfer as to present creditors if, among other things, the transfer is (a) made with actual intent to hinder, delay or defraud any creditor of the debtor, or (b) made without receiving a reasonably equivalent value in exchange for the transfer and while the debtor was insolvent or which rendered the Debtor insolvent. *See* §§ 56-10-18 and -19 NMSA 1978. The conversion of non-exempt assets into exempt asset is a "transfer" as that term is used in UFTA. *See Dofflemeyer*, 855 P.2d at 1057.

To determine whether an exemption should be denied on the basis of a debtor's conversion of non-exempt assets into exempt assets, the Court must reconcile the New Mexico exemption statutes with the UFTA. *Id.* at 1056-57. To do so, the Court will analyze whether the transfer of non-exempt assets into exempt form serves the purposes of the exemption statutes or whether such transfer was in furtherance of an intent to defraud creditors. The Court must determine in each case whether a debtor has crossed the line of legitimacy and is defrauding creditors. Where the debtor has converted non-exempt assets into exempt asset for the intended purpose of defrauding creditors, the exemption must be disallowed. Proof that a debtor was motivated in part by an intent to shield an asset from creditors does not by itself establish intent to defraud creditors; otherwise, the exemption always would be disallowed whenever the debtor converted a non-exempt asset into an exempt asset for the purpose of taking advantage of the

exemption statutes. Further, an exemption claimed under the New Mexico exemption statutes will not be denied on the basis that the transfer of non-exempt property into exempt form satisfies the elements for a fraudulent transfer under the UFTA on grounds not requiring actual intent to defraud.[9]

The *Dofflemeyer* court enunciated these principles as follows:

> We believe that the Uniform Fraudulent Transfer Act and the exemption statutes should be construed together to obtain the purposes of both.
>
> . . . .
>
> [I]t is our holding today that the conversion of non-exempt funds into funds that are ordinarily exempt under Sections 42-10-2 and -3 are not automatically protected from attachment by creditors without an analysis of whether the transfer served the underlying purpose of the exemption statutes and was not in furtherance of an intent to defraud creditors.
>
> . . . .
>
> We emphasize, however, the purposeful conversion of non-exempt funds into exempt funds immediately prior to bankruptcy or threatened execution by a creditor is not fraudulent *per se*; it is only one indicium of fraud and does not necessarily by itself make out a claim of fraudulent conversion. (citation omitted). To defeat the exemptions under the statutes here, there must be a showing of an intent to defraud creditors and that showing must be consistent with the provisions of the Uniform Fraudulent Transfer Act.

*Dofflemeyer*, 855 P.2d at 1056, 1058.[10]

In *Dofflemeyer,* the debtor, after receiving a writ of execution from a judgment creditor and in contemplation of bankruptcy, liquidated non-exempt assets to purchase two exempt annuities. The debtor liquidated a non-exempt certificate of deposit in the amount of $54,000 before the creditor could garnish the asset, and used the proceeds to purchase an annuity. The

---

[9] *See Dofflemeyer*, 855 P.2d at 1057-58 (the Court's analysis of the interplay between the exemption statutes and UFTA focuses only on the actual intent to defraud ground for avoiding a transfer under the UFTA.

[10] The approach taken by the *Dofflemeyer* court to reconcile exemptions statutes with the Uniform Fraudulent Transfer Act by disallowing the exemption only upon the showing of actual fraud on the part of the debtor is consistent with the approach taken by other courts. *Addison v. Seaver (In re Addison)*, 540 F.3d 805, 809 (8th Cir. 2008); *In re Soza*, 542 F.3d 1060 (5th Cir. 2008); *In re Montanaro*, 398 B.R. 688 (Bankr.W.D.Miss. 2008)

Case 09-12552-j7   Doc 37   Filed 02/24/10   Entered 02/24/10 10:40:08 Page 5 of 10

debtor also sold non-exempt real estate to his sister and used the proceeds to purchase a second annuity. The debtor then claimed both annuities were exempt under New Mexico law. The trial court, while expressing concern about the legitimacy of the exemptions, found that "the clear language and plain meaning of the exemption statutes compelled him to allow the exemptions and to dismiss [the creditor's] writ of garnishment with regard to the two annuities." *Id.* at 1056. On appeal, the New Mexico Supreme Court, after determining that allowance or denial of exemptions requires consideration of the language and policies of both the exemption statutes and UFTA, reversed the trial court's grant of summary judgment finding that there existed genuine issues of material fact. *Id.* at 1058. The Court concluded that conversion of non-exempt into exempt assets in response to a threatened execution and in contemplation of bankruptcy is not *per se* a fraud on creditors. *Id*. at 1058.

The UFTA sets forth factors, known as badges of fraud, that the Court may consider to determine whether a transfer was made with actual intent to defraud a creditor.[11] Under the UFTA, the trial court is not required to consider these factors; the factors are not exclusive; and proof of actual fraud must be demonstrated by clear and convincing evidence.[12]

Here, Messrs. Forlano and Mansini objected to Mr. Channon's claimed exemption in his Roth IRA, asserting that the UFTA prohibits the allowance of the exemption as fraudulent and that the "factors" contained in NMSA§56-10-18 should be considered.[13] Messrs. Forlano and

---

[11] *See* §56-10-18(B) NMSA 1978[11] and *Ellen Equipment v. C.V. Consultants* 144 NM 55, 57-58, 183 P.3d 940, 942-943 (Ct. App.2008).
[12] *Ellen Equipment,* 183 P.3d at 943.
[13] NMSA 56-10-18 provides that:
    A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
        (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
        (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

-6-

Mansini assert that Mr. Channon, with the intent to hinder, delay or defraud them, used substantially all of his non-exempt assets to purchase the Roth IRA in order to put the funds out of the reach of his creditors. Messrs. Forlano and Mansini introduced certified copies of documents from the state court proceeding against Mr. Channon and CSOL wherein they obtained a default judgment against CSOL on February 10, 2009. At the time Mr. Channon made the Roth IRA contribution creditors were prosecuting fraud claims against him individually and were in hot pursuit. Messrs. Forlano and Mansini further assert, relying on deposition testimony, that Mr. Channon did not really intend to use the Roth IRA funds in retirement, but intended to use the funds at anytime he needed them.[14] Messrs. Forlano and Mansini have the burden of proving that the exemptions are not properly claimed.[15]

In determining whether a debtor took legitimate advantage of statutory exemptions or acted with actual intent to defraud his creditors by converting non-exempt asset to exempt assets, the Court should consider all relevant circumstances.[16] After careful consideration of the New Mexico exemption statutes and the UFTA , this Court finds the factors expressly set forth in the UFTA that are relevant to this inquiry are: (1) whether the transfer (acquisition or enhancement of the value of the exempt asset) was disclosed or concealed; (2) whether the debtor was being sued or threatened with suit when the transfer was made; (3) whether the transfer was of substantially all the debtor's assets; (4)whether the debtor absconded; (5) whether the debtor

---

(a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

[14] See Exhibit 2, Affidavit of Matthew James Channon, p 25-26
[15] See Bankr. Rule 4003(c).
[16] *In re Soza*, 542 F.3d at 1066-67; Clark v. Wilmoth(In re Wilmoth), 397 B.R. 915, 920(8th Cir. BAP 2008); In re Moore, 177 B.R. 437, 442-43(Bankr.N.D.NY 1994); see also, *In re Sholdan*, 217 F.3d 1006,1009-10 (8th Cir. 2000)(where Court of Appeals determined that a court is not limited to statutory factors but free to consider other factors bearing on the issue of fraudulent intent).

Case 09-12552-j7    Doc 37    Filed 02/24/10    Entered 02/24/10 10:40:08 Page 7 of 10

removed or concealed assets; (6) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and (7) whether the transfer occurred shortly before or shortly after a substantial debt was incurred.[17]  Other factors not codified in the UFTA but still relevant to the Court's inquiry include: (8) the value of the asset claimed as exempt; (9) the proportion of the debtor's non-exempt assets transmuted into exempt form; (10) whether the exemption is limited or unlimited; (11) whether the debtor already owned the exempt asset and used non-exempt assets to increase its value; (12) whether the debtor borrowed funds to acquire the exempt asset; (13) whether the debtor intended to use the exempt asset for the legislative purpose behind the claimed exemption; (14) whether allowance of the exemption is consistent with the legislative purpose for the exemption; (15) whether the transmutation of the non-exempt assets into exempt form was made in contemplation of a bankruptcy filing and the proximity of the transmutation to the bankruptcy filing; (16) whether the bankruptcy case is a voluntary or involuntary case; (17) whether the debtor's acquisition of the exempt asset or enhancement of its value deviated from the debtor's historical conduct, and if so to what extent; (18) whether the debtor misrepresented any aspect of the transactions by which exempt assets were acquired or the values of the assets in question; and (19) whether and to what extent non-exempt assets remain available for distribution to creditors in the bankruptcy case.  As with any analysis where the Court must apply a totality of the circumstances, the Court need not give equal weight to all of the factors; the relative weight given to individual factors depends upon the facts and circumstances of each case.[18]

---

[17]  Certain factors set forth in the UFTA are less relevant because they are always or almost always present when a debtor acquires a non-exempt asset or enhances its value, such as (a) whether the transfer was made to an insider, and (b) whether debtor retained control of the property transferred.

[18]  See *In re Commercial Financial Services, Inc*., 350 B.R. 559, 577 (Bankr. N.D.Okla, 2005)(applying "totality of circumstances" test in determining reasonably equivalent business value); *In re Woody*, 494 F.3d 939, 949 (10 Cir. 2007)(applying totality of the circumstances in determining dischargeability of  HEAL loan obligation); *In re Ford*,

This Court finds, after considering all of the pertinent facts, that Mr. Channon's pre-petition conversion of non-exempt assets into exempt assets was not fraudulent. Factors weighing against allowing the exemption include the fact that the Creditors were in hot pursuit of seeking a fraud judgment against Mr Channon when he opened the Roth IRA account; that he transferred substantially all of his non-exempt assets to the IRA; that he was insolvent when he opened the IRA account; that he did not have a history of contributing to an IRA; that he opened the IRA account within four months of commencing his chapter 7 bankruptcy case; and that no non-exempt assets are available for distribution to creditors in the bankruptcy case.

Messrs. Forlano and Mancini rely on Mr. Channon's deposition testimony to establish that Mr. Channon intended to use the Roth IRA funds anytime he needed them, and not for retirement. At trial, Mr. Channon testified that he intended to use the Roth IRA funds for retirement. The Court finds the deposition testimony to be ambiguous and the trial testimony inconclusive as to Mr. Channon's true intent; therefore, the Court cannot find that Mr. Channon intended to use the Roth IRA funds other than for retirement. The Court must, instead, rely on other surrounding facts and circumstances to determine whether the Creditor's objection should be sustained and Mr. Channon's exemption denied.

Several factors weigh in favor of allowing the exemption. Mr. Channon fully disclosed his contributions to the Roth IRA in his bankruptcy case. There is no evidence he misrepresented any aspect of the transaction at any time. There is no evidence that the purchase of the Roth IRA occurred shortly before or after the Creditors' claim against Mr. Channon arose. The value of the asset claimed as exempt is limited to $10,000. Although the New Mexico exemption for retirement accounts is unlimited, Mr. Channon limited his contribution to the Roth

345 B.R. 713, 716 (Bankr.D.Colo.2006)(applying "totality of the circumstances" in determining confirmation of Chapter 13 plan.)

IRA to the amount under the Internal Revenue Code that qualifies for favorable tax treatment. He did not borrow any funds to make the IRA contributions.  Mr. Channon is of the age where it makes good sense to begin saving for retirement.  Finally, Mr. Channon made the contribution the first time he had funds available to make an IRA contribution due to a one time income tax refund.

Under these circumstances, the Court concludes that Mr. Channon's use of $10,000 of non-exempt funds to contribute to an exempt retirement account was not a transfer made with actual intent to defraud creditors, and therefore his claim of exemption for the Roth IRA should be allowed.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P.  An appropriate order will be entered.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: February 24, 2010
Copies to:

Patricia A. Bradley
Law Office of George "Dave" Giddens, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111
*Attorneys for D. Forlano and D. Mansini,*
*Creditors*

Daniel J Behles
Cuddy & McCarthy, LLP
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109
        *Attorneys for Debtor*